## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| CELESTE COFFLAND,              ) | |
| ) | |
| Plaintiff,     ) | |
| ) | CIVIL ACTION |
| v.                             ) | |
| ) | No. 13-1030-JWL |
| CAROLYN W. COLVIN,[1]          ) | |
| Acting Commissioner of Social Security,  ) | |
| ) | |
| Defendant.    ) | |
| _____ ) | |

## MEMORANDUM AND ORDER

Plaintiff seeks review of a decision of the Commissioner of Social Security (hereinafter Commissioner) denying Social Security Disability (SSD)[2] benefits under sections 216(i) and 223 of the Social Security Act. 42 U.S.C. §§ 416(i) and 423 (hereinafter the Act). Finding no error, the court ORDERS that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the decision.

---

[1]On February 14, 2013, Carolyn W. Colvin became Acting Commissioner of Social Security. In accordance with Rule 25(d)(1) of the Federal Rules of Civil Procedure, Ms. Colvin is substituted for Commissioner Michael J. Astrue as the defendant. In accordance with the last sentence of 42 U.S.C. § 405(g), no further action is necessary.

[2]The decision states that Plaintiff also protectively filed an application for supplemental security income (SSI) on January 3, 2011. (R. 11). However, the ALJ did not cite to record evidence of that application, neither Plaintiff nor the Commissioner refers to that application in her brief, and the court does not find record evidence of it.

**I.      Background**

Plaintiff applied for SSD, alleging disability beginning August 10, 2009. (R. 11, 159-62). In due course, Plaintiff exhausted proceedings before the Commissioner, and now seeks judicial review of the final decision denying benefits. She alleges the Administrative Law Judge (ALJ) erred in assessing her residual functional capacity (RFC) by failing to follow the requirements of Social Security Ruling (SSR) 96-8p.

The court's review is guided by the Act. Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009). Section 405(g) of the Act provides that in judicial review "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). The court must determine whether the ALJ's factual findings are supported by substantial evidence in the record and whether he applied the correct legal standard. Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); accord, White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001). Substantial evidence is more than a scintilla, but it is less than a preponderance; it is such evidence as a reasonable mind might accept to support a conclusion. Richardson v. Perales, 402 U.S. 389, 401 (1971); Wall, 561 F.3d at 1052; Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988).

The court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency." Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting Casias v. Sec'y of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991)); accord, Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005). Nonetheless, the determination whether substantial evidence supports the Commissioner's decision is not

simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion.  Gossett, 862 F.2d at 804-05; Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

The Commissioner uses the familiar five-step sequential process to evaluate a claim for disability.  20 C.F.R. §§ 404.1520, 416.920; Wilson v. Astrue, 602 F.3d 1136, 1139 (10th Cir. 2010) (citing Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988)).  "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary."  Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084).  In the first three steps, the Commissioner determines whether claimant has engaged in substantial gainful activity since the alleged onset, whether she has a severe impairment(s), and whether the severity of her impairment(s) meets or equals the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1).  Williams, 844 F.2d at 750-51.  After evaluating step three, the Commissioner assesses claimant's RFC.  20 C.F.R. § 404.1520(e).  This assessment is used at both step four and step five of the sequential evaluation process.  Id.

The Commissioner next evaluates steps four and five of the sequential process-- determining at step four whether, in light of the RFC assessed, claimant can perform her past relevant work; and at step five whether, when also considering the vocational factors of age, education, and work experience, claimant is able to perform other work in the economy.  Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084).  In steps one through four the burden is on Plaintiff to prove a disability that prevents performance of

past relevant work. Blea v. Barnhart, 466 F.3d 903, 907 (10th Cir. 2006); accord, Dikeman v. Halter, 245 F.3d 1182, 1184 (10th Cir. 2001); Williams, 844 F.2d at 751 n.2. At step five, the burden shifts to the Commissioner to show that there are jobs in the economy which are within the RFC assessed. Id.; Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999).

## III.   RFC Assessment

Plaintiff claims error in the RFC assessment because the ALJ did not explicitly relate the RFC assessed "to any specific medical evidence or testimony;" did not "provide any reasonable narrative discussion as to how the medical evidence supports his arbitrary [RFC] conclusions" (Pl. Br. 10)[3]; erroneously accorded "significant weight" to the opinions of the state agency medical consultants, Dr. Bullock and Dr. Siemsen, but only "some weight" to the opinion of the state agency psychological consultant, Dr. Maxfield, id. at 11-13; ignored "pertinent and relevant facts in the form of the exertional and non-exertional limitations associated with Coffland's condition," and erroneously discounted "the credibility of Coffland regarding the effects of both her physical & mental conditions on her ability to work, [by] completely ignor[ing] significant factors affecting a true RFC." (Pl. Br. 13). The Commissioner argues that the ALJ properly evaluated the credibility of Plaintiff's allegations of symptoms (Comm'r Br. 9-11), properly weighed

---

[3]Plaintiff did not number the pages in her brief, therefore, the court uses the page numbers assigned by the software it uses to open the portable data file (.pdf) document containing Plaintiff's brief in the court's case management/electronic case filing (CM/ECF) system–Adobe Acrobat X Pro, version 10.1.2.

4

the medical opinions, id. at 12-14, and properly linked his RFC assessment to the record evidence. Id. at 14.

A. **Standard for Assessing RFC**

RFC is an assessment of the most a claimant can do on a regular and continuing basis despite her limitations. 20 C.F.R. § 404.1545(a); see also, White, 287 F.3d at 906 n.2. It is an administrative assessment, based on all the evidence, of how a claimant's impairments and related symptoms affect her ability to perform work-related activities. Id.; see also SSR 96-5p, West's Soc. Sec. Reporting Serv., Rulings 126 (Supp. 2013) ("The term 'residual functional capacity assessment' describes an adjudicator's findings about the ability of an individual to perform work-related activities."); SSR 96-8p, West's Soc. Sec. Reporting Serv., 144 (Supp. 2013) ("RFC is an administrative assessment of the extent to which an individual's medically determinable impairment(s) . . . may cause physical or mental limitations or restrictions that may affect his or her capacity to do work-related physical and mental activities."). The Commissioner has provided examples of the types of evidence to be considered in making an RFC assessment, including: medical history, medical signs and laboratory findings, effects of treatment, reports of daily activities, lay evidence, recorded observations, medical source statements, effects of symptoms, attempts to work, need for a structured living environment, and work evaluations. SSR 96-8p, West's Soc. Sec. Reporting Serv., Rulings 147 (Supp. 2013).

Although an ALJ is not an acceptable medical source qualified to render a medical opinion, "the ALJ, not a physician, is charged with determining a claimant's RFC from

5

the medical record." Howard v. Barnhart, 379 F.3d 945, 949 (10th Cir. 2004). "And the ALJ's RFC assessment is an administrative, rather than a medical determination." McDonald v. Astrue, 492 F. App'x 875, 885 (10th Cir. 2012) (citing SSR 96-05p). Because RFC assessment is made based on "all of the evidence in the record, not only the medical evidence, [it is] well within the province of the ALJ." Dixon v. Apfel, No. 98-5167, 1999 WL 651389, at *2 (10th Cir. Aug. 26, 1999); 20 C.F.R. § 404.1545(a). Moreover, the final responsibility for determining RFC rests with the Commissioner. 20 C.F.R. §§ 404.1527(e)(2), 404.1546.

The Commissioner issued SSR 96-8p "[t]o state the Social Security Administration's policies and policy interpretations regarding the assessment of residual functional capacity (RFC) in initial claims for disability benefits." West's Soc. Sec. Reporting Serv., Rulings 143 (Supp. 2013). The ruling includes narrative discussion requirements. Id. at 149. The discussion is to cite specific medical facts and nonmedical evidence to describe how the evidence supports each conclusion, discuss how the plaintiff is able to perform sustained work activities, and describe the maximum amount of each work activity the plaintiff can perform. Id. The discussion must include an explanation how any ambiguities and material inconsistencies in the evidence were considered and resolved. Id. It must include consideration of the credibility of plaintiff's allegations of symptoms and consideration of medical opinions regarding plaintiff's capabilities. Id. at 149-50. If the ALJ's RFC assessment conflicts with a medical source opinion, the ALJ must explain why he did not adopt the opinion. Id. at 150.

6

### B. The ALJ's RFC Assessment

The ALJ's RFC assessment in this case is presented as finding number 5 in the decision. (R. 15-16). The analysis and rationale upon which he based his assessment is contained in the decision at pages 6 through 9. (R. 16-19). Therein, the ALJ cited the regulations and rulings controlling his consideration of the credibility of Plaintiff's allegations and his consideration of the medical source opinions. (R. 16). He summarized Plaintiff's allegations, the record evidence, and the opinion evidence. (R. 16-19). He discussed the opinion evidence and stated his findings regarding the weight to be accorded each opinion, and he stated his finding regarding the credibility of Plaintiff's allegations of symptoms, and the bases for his credibility finding. (R. 17-19).

Specifically, the ALJ found that Plaintiff has the RFC to:

> lift up to twenty pounds occasionally and lift or carry up to ten pounds frequently; stand and/or walk for six hours out of an eight-hour workday; and sit for six hours out of an eight-hour workday. The claimant can occasionally climb stairs, stoop, crouch, kneel or crawl, but should never climb ropes, scaffolds or ladders, and can frequently balance. Further, the claimant must avoid prolonged exposure to cold temperature extremes, wetness and vibrations. Additionally, the claimant may do simple to intermediate tasks, but is limited to jobs that do not demand attention to details or complicated job tasks or instructions secondary to mental issues and reported chronic pain. Finally, the claimant retains the ability to maintain attention and concentration for a minimum of two-hour periods at a time and can adapt to changes in the workplace on a basic level.

(R. 15-16).

The ALJ found Plaintiff's allegations of symptoms "generally not fully credible" (R. 19); but he accorded "significant weight" to the reports of consultative examinations

prepared by non-treating sources, Dr. Johnson and Dr. Koeneman; and to the reports that the state agency non-examining physicians, Dr. Bullock and Dr. Siemsen, prepared after reviewing the record evidence. (R. 17-18). He accorded only "some weight" to the reports that the state agency non-examining psychologists, Dr Maxfield and Dr. Stern, prepared after reviewing the record evidence, but in doing so, the ALJ determined based on those reports to "give[] the claimant the benefit of the doubt [regarding mental limitations] and limit[ed] her to simple to intermediate tasks and jobs that do not demand attention to details or complicated job tasks or instructions." (R. 18). The ALJ decided to accord "little weight" to the reports of various physicians which were prepared between October 1998 and October 2003 and before Plaintiff's alleged onset date of disability. (R. 18). He accorded "no weight" to a vocational analysis prepared in July 2000, before Plaintiff's alleged onset date. Id. Finally, the ALJ accorded "little significance" to the opinions expressed in reports completed by Plaintiff's friend, Lila Hamit. (R. 19).

In conclusion, the ALJ summarized his analysis, noting that:

> based upon the substantial weight of the objective evidence, the claimant's course of treatment, her level of daily activity, her work history, the undersigned finds that the claimant retains the residual functional capacity as listed above. This residual functional capacity is based on the entire medical record and adjusted to give the claimant the benefit of the doubt with regard to h[er] allegations of disability.

(R. 19).

**C.    Analysis**

Much of Plaintiff's argument is merely conclusory allegations of error without citation or explanation of the specific error in the decision at issue. Where Plaintiff and her counsel fail to explain or point to specific errors in the decision, the court will not seek to find errors for her. For example, Plaintiff's allegations that the ALJ did not explicitly relate the RFC assessed "to any specific medical evidence or testimony" and ignored "pertinent and relevant facts in the form of the exertional and non-exertional limitations associated with Coffland's condition," are belied as a general matter by the court's discussion of the ALJ's RFC assessment, by the fact that the decision is full of citation to, and discussion of, the medical evidence and Plaintiff's testimony, by the ALJ's discussion in his RFC assessment of "the claimant's asserted medical conditions" (R. 19), and by his evaluation of Plaintiff's impairments at step two and step three of his evaluation. (R. 13-14). Plaintiff does not identify specific limitations which were allegedly ignored, and the court will not do counsel's job, and attempt to find some material evidence or testimony in particular which the ALJ ignored or did not relate to his RFC assessment. See, Garrett v. Selby Connor Maddox & Janer, 425 F.3d 836, 840 (10th Cir. 2005) ("the court cannot take on the responsibility of serving as the litigant's attorney in constructing arguments and searching the record").

With regard to Plaintiff's conclusory argument that the ALJ did not "provide any reasonable narrative discussion as to how the medical evidence supports his arbitrary [RFC] conclusions," the court would refer Plaintiff to the ALJ's entire RFC discussion (R. 16-19) and suggest that is the required narrative discussion. As the court has found

itself explaining to many Plaintiffs recently (and to some represented by counsel in this case), "there is no requirement in the regulations for a direct correspondence between an RFC finding and a specific medical opinion." Chapo v. Astrue, 682 F.3d 1285, 1288 (10th Cir. 2012) (citing Howard, 379 F.3d at 949; Wall, 561 F.3d at 1068-69). The narrative discussion required by SSR 96-8p does not require citation to a medical opinion, or even to medical evidence in the administrative record for each RFC limitation assessed. Castillo v. Astrue, No. 10-1052, 2011 WL 13627, *11 (D. Kan. Jan. 4, 2011). "What is required is that the discussion describe how the evidence supports the RFC conclusions, and cite specific medical facts and nonmedical evidence supporting the RFC assessment." Id. See also, Thongleuth v. Astrue, No. 10-1101-JWL, 2011 WL 1303374, *13 (D. Kan. Apr. 4, 2011). There is no need in this case, or in any other, for the Commissioner to base the limitations in his RFC assessment upon specific statements in medical evidence or upon specific opinions in the record. The ALJ in this case applied the correct standard to assess Plaintiff's RFC, and Plaintiff does not point to evidence which was ignored or misinterpreted by the ALJ, or to facts which would preclude the findings of the ALJ.

Plaintiff's entire argument regarding the ALJ's credibility determination is contained in a single sentence: "Further, in discounting the credibility of Coffland, regarding the effects of both her physical & mental conditions on her ability to work, the ALJ has completely ignored significant factors affecting a true RFC." (Pl. Br. 13). Plaintiff did not identify any of the factors allegedly ignored, and has waived

10

consideration of this issue by failing to develop any argument with regard to it. See, Wall, 561 F.3d at 1066 (issue presented without developed argumentation is waived); Franklin Sav. Corp. v. U.S., 180 F.3d 1124, 1128 n.6 (10th Cir. 1999) (arguments presented superficially are waived) (citing Sports Racing Servs., Inc. v. Sports Car Club of America, Inc. 131 F.3d 874, 880 (10th Cir. 1997) (dismissing claims never developed, with virtually no argument presented)).

Despite the definite lack of developed argumentation in Plaintiff's brief, the court finds that Plaintiff did develop an argument regarding error in the ALJ's evaluation of the medical opinions of the state agency consultants, Dr. Bullock and Dr. Siemsen. (Pl. Br. 11-12). Most of Plaintiff's argument consists of a summary of the opinions of the doctors and the ALJ's evaluation of each. Id. Beyond that, Plaintiff notes that the opinions of Dr. Bullock and Dr. Siemsen were formed prior to MRIs which were made on Plaintiff's cervical and lumbar spines in January 2011. Id. at 12 (citing R. 498-501). Plaintiff points out that both Dr. Bullock and Dr. Siemsen noted no evidence of stenosis in the lumbar spine, but that the January 2011 MRI revealed multilevel neural foraminal narrowing. (Pl. Br. 12) (citing R. 501) Plaintiff argues that because the MRIs were done after the opinions were formulated, the physicians were unaware of the neural foraminal narrowing and did not take into consideration the degenerative changes in Plaintiff's cervical spine revealed by the c-spine MRI. Id. Apparently for good measure, Plaintiff asserts that "neither opinion mentions Coffland's severe impairment of obesity or osteopenia." Id. Plaintiff then presents the error she believes was committed: that "the ALJ gave 'the

opinions of the State agency medical consultants' significant weight [(because they were rendered after a review of the medical record and they are consistent with each other and the medical record as a whole including the examination of Dr. Johnson)]'" despite the fact that the physicians did not have the benefit of the January 2011 MRIs and did not mention obesity or osteopenia in their opinions. Id. (quoting R. 18) (parentheses added).

Plaintiff's argument forgets that it is the ALJ's decision which is to be reviewed by the court, not the medical opinions on which that decision relies. Plaintiff is correct that the state agency consultants did not have benefit of the MRIs produced thereafter, and that they did not mention obesity or osteopenia. But those fact have no effect on the propriety of the ALJ's decision. The ALJ found that Plaintiff has the severe impairments of obesity and osteopenia. (R. 13-14, 19). The ALJ considered the January 2011 MRIs, summarized them, and noted that the cervical spine MRI revealed "degenerative disc disease" (R. 17), and that the lumbar spine MRI revealed "neural foraminal narrowing." (R. 18). Plaintiff points to no authority for the proposition that "neural foraminal narrowing" is preclusively inconsistent with "no evidence of neuroforaminal stenosis." Plaintiff points to no limitation which was not included in the RFC assessed by the ALJ and which these fact would require. In other words, Plaintiff points to no error in the ALJ's decision. As Plaintiff acknowledges, the ALJ gave "the opinions of the State agency medical consultants' significant weight because they were rendered after a review of the medical record and they are consistent with each other and the medical record as a whole including the examination of Dr. Johnson." (R. 18). Plaintiff points to nothing

12

which demonstrates error in this finding. The consultants' opinions were, in fact, rendered after a review of the medical record as constituted at that time, the opinions are, in fact, consistent with each other and with the examination of Dr. Johnson. Moreover, the ALJ also accorded Dr. Johnson's opinion "significant weight," and Plaintiff does not allege error in that finding. The only possible error is if the January 2011 MRIs preclude finding that the opinions are consistent with "the medical record as a whole." Plaintiff points to no authority holding that if a medical opinion is <u>in any respect</u> inconsistent with a later-acquired MRI it cannot be consistent with the medical record as a whole. Plaintiff has shown no error in the ALJ's findings with regard to the medical opinions.

Looking at Plaintiff's discussion of Dr. Maxfield's opinion, the court is at a loss to ascertain the error of which Plaintiff may be complaining. In her brief, Plaintiff summarizes Dr. Maxfield's opinion and notes that the ALJ accorded that opinion only "some weight," but gave Plaintiff the benefit of the doubt and limited her to simple and intermediate tasks and jobs that do not demand attention to details or complicated job tasks or instructions. (Pl. Br. 12-13). Immediately thereafter, Plaintiff argues that "[b]y ignoring pertinent and relevant facts in the form of the exertional and nonexertional limitations associated with Coffland's condition, the ALJ has established a faulty RFC that does not take into account the central aspects of Coffland's impairments, specifically the findings of the MRIs performed in January of 2011." <u>Id.</u> at 13. Beyond the issues discussed above with regard to Dr. Bullock's and Dr. Siemsen's opinions, the court simply cannot ascertain the pertinent and relevant facts regarding exertional and

nonexertional limitations which Plaintiff believes were ignored, the allegedly central aspects of Plaintiff's impairments which were not taken into account, or how the January 2011 MRIs relate <u>in any manner</u> to Plaintiff's mental impairments or to Dr. Maxfield's opinions as a psychologist.

**IT IS THEREFORE ORDERED** that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's decision.

Dated this 17th day of April 2014, at Kansas City, Kansas.

s:/ John W. Lungstrum
**John W. Lungstrum**
**United States District Judge**